**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anita Rodriguez-Wakelin, | No. CV-17-00376-TUC-RM |
| Plaintiff, | **ORDER** |
| v. | |
| Daniel Barry, et al., | |
| Defendants. | |

On August 1, 2017, Plaintiff Anita Rodriguez-Wakelin filed a *pro se* Complaint against Tucson Police Department ("TPD") officers Daniel Barry ("Barry"), Gary Parrish ("Parrish"), and Scott Glass ("Glass"); Pima County Attorney Barbara LaWall ("LaWall"); and unknown TPD officers. (Doc. 1.) Plaintiff's Complaint asserts claims for negligence, gross negligence, wrongful death, and malicious prosecution; claims under 42 U.S.C. § 1983 alleging due process violations under the Fifth and Fourteenth Amendments; and § 1983 claims alleging unreasonable search and seizure, false imprisonment, and false arrest under the Fourth Amendment. (Doc. 1 at 2.)[1]

Defendants answered the Complaint (Docs. 4, 7), and Defendant LaWall filed a Motion to Dismiss (Doc. 6). The Court dismissed LaWall on the grounds of absolute immunity. (Doc. 20.) The Court later granted summary judgment in favor of Defendants Barry, Parrish, and Glass on Plaintiff's state-law claims due to Plaintiff's failure to comply with Arizona's notice-of-claim statute, A.R.S. § 12-821.01. (Doc. 82.)

---

[1] All record citations herein refer to the page numbers generated by the Court's electronic filing system.

1  Currently pending before the Court is Defendants Barry, Parrish, and Glass's

2  Motion for Summary Judgment (Doc. 86) seeking dismissal of Plaintiff's § 1983 claims.

3  The Motion is fully briefed. (Docs. 98, 100, 106.)[2] The Court held oral argument on

4  June 20, 2019, and took the matter under advisement. (Doc. 109.)

5  **I.    Standard of Review**

6  A court must grant summary judgment "if the movant shows that there is no

7  genuine dispute as to any material fact and the movant is entitled to judgment as a matter

8  of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

9  (1986). The movant bears the initial responsibility of presenting the basis for its motion

10 and identifying those portions of the record, together with affidavits, if any, that it

11 believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at

12 323. If the movant fails to carry its initial burden of production, the nonmovant need not

13 produce anything. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102-03

14 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the

15 nonmovant to demonstrate the existence of a factual dispute and to show (1) that the fact

16 in contention is material, i.e., a fact "that might affect the outcome of the suit under the

17 governing law," and (2) that the dispute is genuine, i.e., the evidence is such that a

18 reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*,

19 *Inc.*, 477 U.S. 242, 248-50 (1986); *see also Triton Energy Corp. v. Square D. Co.*, 68

20 F.3d 1216, 1221 (9th Cir. 1995).

21 At summary judgment, the judge's function is not to weigh the evidence and

22 determine the truth but to determine whether there is a genuine issue for trial. *Anderson*,

23 477 U.S. at 249. In evaluating a motion for summary judgment, the court must "draw all

24 reasonable inferences from the evidence" in favor of the non-movant. *O'Connor v.*

25 *Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002). If "the evidence yields

26 conflicting inferences, summary judgment is improper, and the action must proceed to

27

28 _____

[2]    Plaintiff's Amended Response (Doc. 98) supersedes her original Response (Doc. 89), and Defendants' Amended Reply (Doc. 100) supersedes their original Reply (Doc. 90).

- 2 -

trial." *Id.* "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## II.    Facts

Defendant Barry is a TPD detective assigned to the Internet Crimes Against Children ("ICAC") Unit.  (Doc. 87 at 1-2; Doc. 87-2 at 2, 28.)  On December 2, 2015, an investigative tool used by TPD's ICAC unit located a computer with the IP address 68.228.45.62 that was potentially sharing child sexual abuse files on the Bittorrent network.   (Doc. 87 at 2; Doc. 87-2 at 13, 29-30.)   TPD's undercover computer automatically queried the computer with IP address 68.228.45.62, and numerous files of interest were downloaded onto the undercover computer.  (Doc. 87 at 2; Doc. 87-2 at 13, 30.)  Barry reviewed the files and determined that they depicted children under the age of 18 engaged in sexual acts and/or exploitive exhibition.  (Doc. 87 at 3; Doc. 87-2 at 13, 30.)

On December 3, 2015, Barry obtained a grand jury subpoena requiring Cox Communications to provide subscriber information related to IP address 68.228.45.62 used on December 2, 2015.  (Doc. 87 at 3; Doc. 87-2 at 14, 21.)  There is no evidence that either Glass or Parrish assisted Barry with the grand jury subpoena.  (Doc. 87 at 4; Doc. 87-2 at 43, 51.)   In an Incident/Investigation Report, Barry wrote that Cox Communications responded to the subpoena on November 12, 2015, identifying Plaintiff's son, Alejandro Wakelin ("Alex"), as the subscriber associated with IP address 68.228.45.62.  (Doc. 87-2 at 14.)[3]

Attached as an exhibit to Defendants' Statement of Facts is an email from Cox Communications to Barry that is dated December 28, 2015 and includes the subject line: "Customer Information Request."  (Doc. 87-2 at 22.)  The email itself does not reference any particular customer or IP address, nor does it indicate how many pages of records are attached.  (*Id.*)  The next page of the exhibit is titled "Responsive Records" and indicates

---

[3]    Barry's reference to November 12, 2015 appears to have been an error, as Cox's response is dated December 28, 2015, and Barry indicated in a search warrant affidavit that Cox responded on December 28, 2015.  (Doc. 87-2 at 22, 30.)

that 1 DHCP lease record was found for IP address 68.228.45.62, with a start date of July 11, 2015 and an end date of December 29, 2015.  (*Id.* at 23.)  That page does not mention Alex's name.  (*Id.*)  The third page of the exhibit is a screenshot of a Cox Communications customer information page for account number 5213258-04.  (*Id.* at 24.)  That page lists Alex's name, address, and phone number, and indicates that Alex's account had been active since February 17, 2013; the page does not mention IP address 68.228.45.62.  (*Id.*)  Plaintiff has not identified any evidence undermining Defendants' representation that the three pages of this exhibit together constitute Cox's response to the grand jury subpoena.  According to Barry's Incident/Investigation Report and search warrant affidavit, after receiving Cox's subpoena response, TPD conducted a wireless surveillance of the area surrounding Alex's address to ensure there were no unsecured wireless networks.  (Doc. 87 at 3; Doc. 87-2 at 14, 31.)

On July 27, 2016, Pima County Superior Court Judge Kenneth Lee issued a search warrant for Alex's apartment and car.  (Doc. 87 at 4; Doc. 87-2 at 15, 25-32, 38-41.)  Barry prepared and presented the affidavit in support of the search warrant.  (Doc. 87 at 3-4; Doc. 87-2 at 15, 25-32.)  Parrish, as the Sergeant of Barry's unit, sometimes reviewed search warrant affidavits, but he cannot recall if he reviewed the affidavit Barry prepared for the search of Alex's apartment and car.  (Doc. 87-2 at 55.)  The record contains no evidence indicating that Glass was involved in the preparation or presentation of the search warrant affidavit.  (Doc. 87 at 4; Doc. 87-2 at 47.)

Barry's search warrant affidavit describes Barry's training and experience, the crime being investigated, and the December 2015 download of files of interest.  (Doc. 87-2 at 28-30.)  Specifically, the affidavit states that TPD's investigative tool downloaded files of interest from a computer with IP address 68.225.45.62.  (*Id.* at 30.)  The affidavit further states that Barry requested a grand jury subpoena directing Cox Communications to provide subscriber information for the user of IP address 68.228.45.62.  (*Id.*)  The affidavit then states:

. . . .

On 12/28/15, Cox Communications responded to the subpoena, identifying the following subscriber as being associated with IP address 70.176.130.130 from 07/11/2015 at 08:01:42 (GMT) and 12/29/15 at 20:16:43 (GMT.)
> Subscriber Name: Alejandro Wakelin
> Service Address: 5755 E. River Rd. #1728 Tucson, AZ 85750
> Telephone Number: (520) 661-1169

(*Id.*) Finally, the affidavit describes characteristics of child pornography collectors, including that they typically retain child pornography for many years and keep it hidden from others in private places. (*Id.* at 31.) The affidavit requests a warrant to search Alex's apartment and car for indicia of occupancy; pornographic DVDs, CDs, VHS recordings, photographs, and images; and a variety of electronic devices including computers, memory drives, and cell phones. (*Id.* at 25-27.)

Detectives from the ICAC Unit and the Sex Offender Registration and Tracking Unit, including Barry, Parrish, and Glass, executed the search warrant on July 28, 2016. (Doc. 87 at 5; Doc. 87-2 at 15; *see also* Doc. 98-20.) The officers immediately detained Alex and his girlfriend, and took both individuals to the ICAC Command Post located at the apartment complex. (Doc. 87 at 5; Doc. 87-2 at 15.) Barry asked Alex if he wished to speak to him about why the search warrant was being served, but Alex asked if he could have an attorney and was not questioned.[4] (Doc. 87 at 5; Doc. 87-2 at 15.) Barry interviewed Alex's girlfriend, searched her cell phone with her permission, and allowed her to leave after no files of interest were found on the phone. (Doc. 87 at 5; Doc. 87-2 at 15.)

On the date that the search warrant was executed but at an unknown time, Barry forensically previewed numerous items seized from Alex's residence. (Doc. 87 at 6; Doc. 87-2 at 3-4, 15-16.) He located evidence of the installation of qBitTorrent and uTorrent, both of which are software used to access the BitTorrent network. (Doc. 87 at 6; Doc. 87-2 at 3-4, 15-16.) Barry also located over 275 .torrent files with names consistent with child pornography. (Doc. 87-2 at 3-4, 16.) A .torrent file contains metadata about files and folders to be distributed but does not contain the content to be

---

[4] Plaintiff disputes whether Alex was interrogated, but she has presented no evidence indicating that he was questioned after he requested an attorney. (Doc. 95 at 4.)

distributed. (*Id.* at 16.) Barry also located a folder identical to one downloaded by the TPD undercover computer in the recycle bin of a hard drive seized from Alex's residence, though the actual contents of the folders were no longer present on the drive. (*Id.*) Barry did not locate the content of any files of interest in the items seized from Alex's apartment. (Doc. 87 at 6.) However, based on the remnants located during the forensic preview analysis, Barry concluded that ten files of interest had been downloaded from Alex's computer by TPD's undercover computer. (Doc. 87-2 at 15-17.)[5] A second forensic preview completed on July 29, 2016 concluded that files of interest had most likely been transferred to an external drive not found during the search. (*See id.* at 16.)

TPD arrested Alex and charged him with ten counts of sexual exploitation of a minor in violation of A.R.S. § 13-3553. (Doc. 87 at 6; Doc. 98-6 at 1.) The documents in the record before the Court contain a discrepancy concerning the date of Alex's arrest. Barry's discovery responses and his Incident/Investigation Report indicate Alex was arrested after the forensic preview of items seized from his apartment (*see* Doc. 87-2 at 3-4, 15-17), and a document titled TPD Booking Information Summary similarly indicates that Alex was arrested on July 28, 2016 (Doc. 98-14). In contrast, the arrest report indicates that Alex was arrested on January 27, 2016 at 11:26 (Doc. 98-6). The January 27, 2016 date also appears on Barry's Incident/Investigation Report, which is dated August 1, 2016 but inexplicably lists a follow-up supplement date of January 27, 2016. (Doc. 87-2 at 12.) In addition, the January 27, 2016 date is contained in a document titled "Event Chronology — E160270355" which appears to describe a call regarding sex offenses related to Cheena Productions located at 5755 E. River Road. (Doc. 98-8.) A document titled "Calls for Service Report" indicates that on January 27, 2016, Barry responded to an incident regarding sex offenses at 5755 E. River Road, and that event E160270355 was assigned case number P1601-270242. (Doc. 98-10.) The dispatch date and time, January 27, 2016 at 11:26 (*id.*), corresponds to the date and time listed on

---

[5] There are slight discrepancies between Barry's description of the files of interest in the search warrant affidavit (Doc. 87-2 at 30) and in his Incident/Investigation Report (*id.* at 16-17.)

- 6 -

Alex's arrest report (Doc. 98-6).  Furthermore, the case number 1601270242 corresponds to the case number listed in the arrest report and in Barry's Incident/Investigation Report for the investigation of Alex.  (Doc. 87-2 at 12; Doc. 98-6; Doc. 98-10.)  This date, time, and case number are also contained in a document titled "Case Summary Report."  (Doc. 98-12.)

On August 9, 2016, Defendant Glass authored a supplement to the Incident/Investigation Report for case number 1601270242, stating that he had been informed on August 8, 2016 that Alex had been found dead of an apparent self-inflicted gunshot wound on August 6, 2016.  (Doc. 98-20.)[6]  Glass further stated that he notified Barry, Parrish, and the Pima County Attorney's Office of Alex's death.  (*Id.*)  On August 15, 2016, Barry wrote a supplement to his Incident/Investigation Report, indicating that he was to present Alex's case to the Pima County Grand Jury on that date but that on August 9, 2016 he was advised that Alex had been found near Flagstaff, Arizona, deceased as a victim of an apparent suicide, and that Alex's case had therefore been "exceptionally closed."  (Doc. 87-2 at 20; Doc. 98-22.)  The precise date of the dismissal of Alex's charges is unclear.  Plaintiff avers that the charges were dismissed on August 5, 2016, prior to Alex's death.  (Doc. 95 at 5-6.)  A signed document dismissing the criminal complaint against Alex contains both the dates August 5, 2016 and August 8, 2016.  (*See* Doc. 98-26.)  Alex's public defender sent him a letter dated August 8, 2016, stating that the felony charge against him had been dismissed.  (Doc. 51-15.)

III.    **Discussion**

Prior to addressing the merits of Defendants' Motion for Summary Judgment, the Court first addresses preliminary matters bearing on the proper analysis of the claims asserted in Plaintiff's Complaint.

A.    **Official-Capacity vs. Individual-Capacity Claims**

The caption of Plaintiff's Complaint (Doc. 1 at 1) indicates that Defendants Barry, Parrish, and Glass are being sued in their official capacities.  However, the remainder of

---

[6]    Handwritten notations on a TPD Booking Information Summary also indicate that Alex's date of death was August 6, 2016.  (Doc. 98-14.)

Plaintiff's Complaint and the course of proceedings in this case indicate Defendants are being sued in their individual capacities.

A government official may be sued in their individual capacity for damages under 42 U.S.C. § 1983 based on acts taken in an official capacity. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991). In an individual-capacity suit, the plaintiff must show that the individual defendant "was personally involved in the deprivation of [the plaintiff's] civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). The plaintiff need not show a connection to a governmental policy or custom. *Hafer*, 502 U.S. at 25. In contrast, an official-capacity suit "generally represent[s] only another way of pleading an action against the entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (internal quotation omitted). Because the governmental entity is the real party in interest in an official-capacity suit, the plaintiff must show that the entity had a policy or custom that was the moving force behind the alleged constitutional violation. *Hafer*, 502 U.S. at 25; *see also Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694-95 (1978).

The Court has a duty to construe *pro se* pleadings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) ("A document filed *pro se* is to be liberally construed" (internal quotation omitted)). Furthermore, when a complaint is ambiguous regarding whether a government official is being sued in a personal or official capacity, courts take a flexible approach that looks to the entirety of the complaint and the course of the proceedings to determine the capacity in which the individual has been sued. *See Kentucky*, 473 U.S. at 167 n.14; *Shoshone-Bannock Tribes v. Fish & Game Comm'n*, 42 F.3d 1278, 1284-85 (9th Cir. 1994). Although the caption of the Complaint should be considered, it is generally not controlling. *Shoshone-Bannock Tribes*, 42 F.3d at 1285.

Plaintiff indicates in her Complaint that she seeks to "correct the TPD" and "its Officers" of "its policies and practices that fostered [the officers' alleged] misconduct." (Doc. 1 at 6.) However, the factual allegations of the Complaint, as well as Plaintiff's response and surreply to Defendant's Motion for Summary Judgment, focus on the

actions of the individual defendants rather than specific TPD policies or practices.[7] Defendants' written briefs and their assertion of qualified immunity indicate that Defendants believe Plaintiff's Complaint asserts individual-capacity claims. Based on the language of Plaintiff's Complaint and the course of proceedings in this case, the Court will analyze Plaintiff's claims as individual-capacity claims.

## B.    Survivorship vs. Third-Party vs. Wrongful Death Claims

Plaintiff appears to be asserting constitutional claims on behalf of three people: her son Alex, Plaintiff herself, and Alex's girlfriend. Plaintiff asserts that Alex's constitutional rights under the Fourth, Fifth, and Fourteenth Amendments were violated. She also asserts a wrongful death claim and seeks damages that she suffered personally, such as loss of companionship and emotional distress resulting from the death of her son; it is not clear from her Complaint whether the wrongful death claim is asserted solely under state law or also under § 1983, but the Court must construe *pro se* pleadings liberally. *See Erickson*, 551 U.S. at 94. In addition to asserting claims based on the rights of Alex and herself, Plaintiff also alleges that Defendants violated the constitutional rights of Alex's girlfriend.

Alex's girlfriend is not a party to this action, and Plaintiff cannot assert claims on her behalf. *See Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008) (as a general rule, *pro se* plaintiffs cannot pursue claims on behalf of others in a representative capacity); *see also Alderman v. United States*, 394 U.S. 165, 174 (1969) ("Fourth Amendment rights are personal rights which, like some other constitutional rights, may

---

[7]    In her Surreply, Plaintiff briefly and generally alleges that Defendants have customs or policies that were the moving force behind the alleged constitutional violations in this case. (Doc. 106 at 10.) However, Plaintiff does not identify any evidence in support of this allegation. Plaintiff avers that Barry copied language from a field guide written by J. Thomas McEwen in a search warrant affidavit in another case, and she references a broken hyperlink that appears to be to an online news article. (*Id.* at 4, 10.) As discussed below, Barry's inclusion of language from the field guide in his search warrant affidavit was not unconstitutional. Accordingly, Plaintiff's allegation that Barry's inclusion of such language in another case—even if such allegation were supported by competent evidence—does not show that an unconstitutional policy or practice of the TPD was a moving force behind the violation of Alex's constitutional rights. Plaintiff has identified no other evidence of a policy or practice that could give rise to liability on an official-capacity § 1983 claim.

not be vicariously asserted.")  However, Defendants concede that Plaintiff has standing to assert claims on behalf of Alex, as she is apparently the representative of his estate.[8] Pursuant to 42 U.S.C. § 1988, a claim under 42 U.S.C. § 1983 that accrued before death survives the decedent if state law authorizes a survival action and the state law of survivorship is consistent with the policies underlying 42 U.S.C. § 1983.  *See Robertson v. Wegmann*, 436 U.S. 584, 588-90 (1978).  With limited exceptions not relevant here, Arizona's survival statute provides that every cause of action "shall survive the death of the person entitled thereto . . . and may be asserted by . . .  the personal representative of such person." A.R.S. § 14-3110.[9]

Survival claims are distinguishable from wrongful death claims.  A survival claim is the decedent's own cause of action, brought on the decedent's behalf by a representative of the decedent's estate; damages on such a claim result from losses suffered by the decedent as a result of the violation of the decedent's rights.  *See Smith v. City of Fontana*, 818 F.2d 1411, 1416-17, 1420 (9th Cir. 1987), *overruled on other grounds by Hodgers-Durgin v. De La Vina*, 199 F.3d 1037 (9th Cir. 1999) (en banc).  In contrast, a wrongful death claim brought under § 1983 alleges that the decedent's death violated the plaintiff's constitutional rights by interfering with the plaintiff's liberty interests in the companionship and society of the decedent; damages on a wrongful death claim are the losses that the plaintiff suffered as a result of the decedent's death.  *See id.* at 1417-20.  Plaintiff has standing to assert a § 1983 wrongful death claim alleging that her own constitutional rights were violated as a result of Alex's death.

## C.    Defendants' Motion for Summary Judgment

Defendants argue that they are entitled to summary judgment because the undisputed facts show (1) that Barry's search warrant affidavit did not contain false or

---

[8]    As the parties have not briefed the issue, the Court expresses no opinion on the propriety of a plaintiff appearing pro se on behalf of an estate.

[9]    The Court expresses no opinion as to whether the limitation on recovery of damages for pain and suffering of the decedent contained in Arizona's survival statute is consistent with the policies of 42 U.S.C. § 1983.  *See Smith v. City of Fontana*, 818 F.2d 1411, 1417 n.8 (9th Cir. 1987), *overruled on other grounds by Hodgers-Durgin v. De La Vina*, 199 F.3d 1037 (9th Cir. 1999) (en banc).

misleading statements; (2) probable cause supported the search warrant and the items to be seized were stated with particularity; (3) Alex was lawfully detained during execution of the search warrant; (4) probable cause existed to arrest Alex for sexual exploitation of a minor in violation of A.R.S. § 13-3553; (5) Defendants cannot be held liable for Alex's suicide; and (6) even if Defendants violated a constitutional right, they are entitled to qualified immunity. (Doc. 86 at 6-11.)

A plaintiff may bring an action under § 1983 to redress violations of his or her "rights, privileges, or immunities secured by the Constitution and [federal] laws" by a person or entity, including a municipality, acting under the color of state law. 42 U.S.C. § 1983. The inquiry in any § 1983 action focuses on two essential elements: (1) whether "the defendants acted under color of law"; and (2) whether the defendants' conduct "deprived the plaintiff of a constitutional right." *Stein v. Ryan*, 662 F.3d 1114, 1118 (9th Cir. 2011) (internal quotation and alteration omitted). In this case, there is no dispute as to the first element; the parties' dispute centers on whether Defendants' conduct deprived Plaintiff and/or Alex of any constitutional rights.

### 1. Fourth Amendment Claims

The first step in analyzing a claim under 42 U.S.C. § 1983 "is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff raises her claims alleging unlawful search and seizure claims under the Fourth Amendment. Although Plaintiff alleges that Alex's rights under the Fifth and Fourteenth Amendments were violated when he was arrested (*see* Doc. 98 at 5), there is no "substantive right under the Due Process Clause of the Fourteenth Amendment to be free from criminal prosecution except upon probable cause," because pretrial deprivations of liberty are specifically addressed by the Fourth Amendment. *Albright*, 510 U.S. at 268, 273-75; *see also Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995) ("Malicious prosecution, by itself, does not constitute a due process violation."). "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that

Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright*, 510 U.S. at 273 (internal quotation omitted). Accordingly, the Court finds that Plaintiff's claims alleging unlawful search, seizure, detention, and arrest are all properly analyzed under the Fourth Amendment, which "is enforceable against the States through the Fourteenth Amendment." *Camara v. Municipal Ct. of San Francisco*, 387 U.S. 523, 528 (1967).

### a. Unlawful Search and Seizure Claim

The undisputed evidence shows that Defendants obtained a search warrant prior to searching and seizing items from Alex's residence and vehicle. Accordingly, to succeed on a Fourth Amendment claim premised on the search and seizure of Alex's property, Plaintiff must show either that the warrant was invalid or that, even if valid, it was executed in a manner that rendered the search and seizure unreasonable. *See United States v. Artis*, 919 F.3d 1123, 1128 (9th Cir. 2019).

### i. Validity of Search Warrant

Plaintiff raises numerous complaints about the validity of the search warrant. She argues that the warrant was not supported by probable cause and complains of typographical errors and mismatched file descriptions. She also complains that Barry included in his warrant affidavit language copied from a field guide written by J. Thomas McEwen entitled Dedicated Computer Crime Units. Plaintiff argues that Barry's inclusion of language from the book "placed a prejudicial influence" upon the magistrate who issued the warrant by indicating that Alex was in possession of all of the listed items to be seized. (Doc. 98 at 9.) Plaintiff further complains that Barry's affidavit provides misleading information by describing characteristics of child pornography collectors.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." This language "imposes three requirements for issuance of a valid search warrant": (1) "the warrant must be issued by a neutral and detached magistrate," (2) "the warrant must be supported by probable cause

to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense," and (3) "the warrant must describe the things to be seized and the place to be searched with particularity." *Artis*, 919 F.3d at 1129 (internal quotations omitted).

Here, Plaintiff has presented no evidence that the magistrate who issued the search warrant for Alex's residence and vehicle was anything but neutral and detached. Plaintiff alleges that the magistrate was biased because Barry's affidavit included language indicating that all listed items to be seized would be found in Alex's possession. However, any reasonable magistrate would have understood the search warrant affidavit to be merely listing items that officers sought to seize *if* they were found in Alex's residence or vehicle.

Plaintiff also alleges that the magistrate was biased because Barry's affidavit described characteristics of child pornography collectors. Plaintiff argues that evidence of a character or trait is inadmissible to prove that a person acted in conformity with that character or trait, quoting the language of Federal Rule of Evidence 404(a); however, Rule 404(a) governs the admissibility of character evidence at trial and is inapplicable to information contained in search warrant affidavits. Information provided in a search warrant affidavit about the characteristics of child pornography collectors can support a finding of probable cause. *See United States v. Gourde*, 440 F.3d 1065, 1072 (9th Cir. 2006) (en banc). Particularly when—as here—a substantial amount of time has passed between a criminal investigation identifying child pornography images and an officer's application for a search warrant, staleness concerns can be alleviated by the inclusion of collector-profile information explaining that collectors of child pornography typically store child pornography for long periods of time. *See United States v. Schesso*, 730 F.3d 1040, 1047 (9th Cir. 2013). Accordingly, the Court rejects Plaintiff's arguments that language in Barry's search warrant affidavit biased the magistrate such that he was no longer neutral and detached.

The Court also rejects Plaintiff's arguments concerning the particularity of the

search warrant. The search warrant described the particular residence and vehicle subject to search, and it specifically listed the items subject to seizure. There is no basis for concluding that the warrant lacked particularity. To the extent that Plaintiff is arguing that the warrant was overbroad, this argument also fails. When there is probable cause to believe that a suspect's computer contains child pornography images, a search warrant authorizing the seizure of all computers and electronic storage devices in the suspect's residence is not overbroad. *See Schesso*, 730 F.3d at 1046-47, 1049.

Because the search warrant at issue in this case was issued by a neutral and detached magistrate and was sufficiently particular, the search warrant's validity depends on whether the warrant was supported by probable cause. To establish probable cause, a search warrant affidavit must include information showing "(1) that a crime was committed; (2) that it was [the suspect] who committed the crime; and (3) that evidence of the crime would be found in the place to be searched." *Chism v. Washington State*, 661 F.3d 380, 389 (9th Cir. 2011) (citing *Gourde*, 440 F.3d at 1070-71). Here, Barry's affidavit included evidence showing that a crime was committed by describing the criminal investigation that led to the download of child pornography images from a computer with the IP address 68.228.45.62. The affidavit also describes the subpoena requesting information from Cox Communications about the subscriber associated with IP address 68.228.45.62. However, the affidavit then states that Cox Communications identified Alex as the subscriber associated with IP address 70.176.130.130, rather than the previously referenced IP address 68.228.45.62.

Defendants construe Plaintiff's arguments concerning errors in the search warrant application as alleging a judicial deception claim under the Fourth Amendment, and they argue that there is no evidence in the record supporting either element of such a claim. (Doc. 86 at 6.) To prove a § 1983 claim for a Fourth Amendment violation stemming from false or omitted information in a warrant affidavit, a plaintiff must show not only that the officer acted deliberately or with reckless disregard, but also that the false or omitted statements were material to a magistrate's finding of probable cause. *KRL v.*

*Moore,* 384 F.3d 1105, 1117 (9th Cir. 2004); *see also Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). To establish materiality, the plaintiff must demonstrate that "the magistrate would not have issued the warrant with false information redacted, or omitted information restored." *Lombardi v. City of El Cajon,* 117 F.3d 1117, 1126 (9th Cir. 1997).

The elements of a judicial deception claim do not neatly fit the facts of this case because here the allegedly false information in Barry's search warrant affidavit actually *undermined* rather than supported the magistrate's finding of probable cause. If the information about the IP address associated with Alex were excised from the search warrant affidavit, there would be no probable cause to believe that Alex committed a crime, because nothing in the affidavit would connect him to the computer with IP address 68.228.45.62 that shared child pornography files with the TPD's undercover computer. However, even if the information about the IP address associated with Alex were *not* excised from the search warrant affidavit, there is still nothing in the affidavit connecting Alex to the computer with IP address 68.228.45.62, as the affidavit states that Alex was reported to be the subscriber associated with IP address 70.176.130.130. Accordingly, the Court finds that Plaintiff's factual allegations are more properly analyzed under *Malley v. Briggs*, 475 U.S. 335 (1986) and its progeny, rather than under the judicial-deception doctrine.

In *Malley*, the United States Supreme Court held that, where a neutral magistrate has issued a warrant, a police officer is entitled to qualified immunity in a subsequent § 1983 action asserting lack of probable cause to support the warrant, unless "the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." 475 U.S. at 344-45. "[T]he threshold for establishing this exception is a high one." *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012). "It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause," and "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination." *United States v. Leon*, 468 U.S. 897, 921

(1984).

Defendants argue that Barry's reference to IP address 70.176.130.130 in the search warrant affidavit was merely a typographical error that had no bearing on the probable cause determination. (Doc. 86 at 6.) The Court agrees, based on the evidence before it, that no reasonable factfinder could conclude that the reference to IP address 70.176.130.130 was anything but a typographical error; however, the Court does not agree that the error had no bearing on the probable cause determination. The search warrant affidavit supports a finding of probable cause that a computer associated with IP address 68.228.45.62 shared child pornography files on December 2, 2015. The affidavit does not include any information connecting Alex to IP address 68.228.45.62; instead, it connects Alex to IP address 70.176.130.130, and the affidavit includes no information to support a finding of probable cause that a computer associated with IP address 70.176.130.130 shared child pornography files. Accordingly, even though the evidence indicates that the reference to IP address 70.176.130.130 was a typographical error, it cannot be said that the error had no effect on the issue of whether probable cause supported the warrant.

Defendants argue that, even if they did violate Alex's constitutional rights, they are entitled to qualified immunity. As noted above, under *Malley*, Defendants are entitled to qualified immunity unless "the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." 475 U.S. at 344-45. The Supreme Court has distinguished between "what fairly could be characterized as a mere technical mistake or typographical error" and errors rendering a warrant "so obviously deficient that we must regard the search as 'warrantless.'" *Groh v. Ramirez*, 540 U.S. 551, 558 (2004).

Here, identifying the deficiency in Barry's search warrant affidavit requires a close proofreading of the affidavit. Although the Court does not condone sloppy police work, this case is more analogous to those in which "a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate," rather than a

case in which "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Messerschmidt*, 565 U.S. at 547-48 (internal quotations omitted). Because the undisputed facts show that official belief in the existence of probable cause was not unreasonable, Defendants are entitled to qualified immunity on Plaintiff's § 1983 claim asserting unlawful search and seizure premised on invalidity of the search warrant.

### ii. Execution of Search Warrant

A search and seizure may be unlawful under the Fourth Amendment despite a valid search warrant if the execution of the search warrant was unreasonable. *See Artis*, 919 F.3d at 1128. Here, there is no evidence that the scope of the search conducted by Defendants exceeded that authorized by the warrant, nor any evidence that Defendants seized evidence that was not listed in the warrant. Because there is no evidence that Defendants seized any evidence that was not specifically listed in the warrant, the plain view doctrine—which Plaintiff repeatedly references in her briefs—is simply inapplicable.

Relying on Federal Rule of Criminal Procedure 41, Plaintiff contests the reasonableness of Defendants' execution of the search warrant by disputing whether the search warrant was properly served on Alex and whether officers notified Alex of the items that could be seized pursuant to the warrant. Although Rule 41 of the Federal Rules of Criminal Procedure contains specific requirements concerning the execution of search warrants, the rule governs only searches that are federal in character, rather than a search by municipal police such as that at issue in this case. *See United States v. Martinez-Garcia*, 397 F.3d 1205, 1213 (9th Cir. 2005). The question before the Court is not whether Defendants violated Rule 41 but whether they violated the Fourth Amendment.

"'The Fourth Amendment says nothing specific about formalities in exercising a warrant's authorization.'" *Martinez-Garcia*, 397 F.3d at 1211 (quoting *United States v. Banks*, 540 U.S. 31, 35 (2003)). The search warrant "notice requirement is not absolute

and has not been fully defined by the United States Supreme Court." *Id.* However, the Supreme Court has stated that the Fourth Amendment does not require an "executing officer to serve the warrant on the owner *before* commencing the search." *Groh*, 540 U.S. at 562 n.5 (emphasis added).

In her Response and Surreply, Plaintiff avers that she found three copies of a list of items to be seized upon arriving at Alex's residence in August 2016. (Doc. 98 at 8; Doc. 106 at 2.) Plaintiff disputes whether these were copies of the search warrant, arguing that they were copies of an excerpt of J. Thomas McEwen's field guide; however, she also alleges that Barry copy-pasted language regarding items to be seized from that field guide into his search warrant affidavit, and the same language appears in the warrant. (Doc. 98 at 9; *see also* Doc. 87-2 at 25-27, 38-41.) Furthermore, Plaintiff avers that a copy of the search warrant's inventoried list of items to be seized was found in Alex's backpack when he traveled to Flagstaff, Arizona. (Doc. 98 at 6.) Accordingly, there is no material factual dispute that Alex was given copies of the list of items that officers could lawfully seize from his residence and vehicle. Plaintiff has not shown that the Fourth Amendment requires more.

Because there are no material issues of fact concerning the reasonableness of Officers' execution of the search warrant, Defendants are entitled to summary judgment to the extent that Plaintiff is claiming that Defendants' search and seizure was unreasonable despite a valid warrant.

### b. Unlawful Detention Claim

Plaintiff argues that Defendants violated Alex's constitutional rights by immediately detaining him upon arriving at his residence to execute the search warrant. Defendants argue that Alex was lawfully detained during execution of the warrant.

"[P]olice may detain a building's occupants while officers execute a search warrant as long as the detention is reasonable." *Dawson v. City of Seattle*, 435 F.3d 1054, 1065 (9th Cir. 2006) (citing *Michigan v. Summers*, 452 U.S. 692, 704-05 (1981); *see also Muehler v. Mena*, 544 U.S. 93, 98 (2005)). Temporary detention during

execution of a search warrant serves at least three important law enforcement interests, including preventing flight, minimizing the risk of harm to officers or occupants, and furthering the orderly and expeditious completion of the search. *Muehler*, 544 U.S. at 98; *Dawson*, 435 F.3d at 1066 (citing *Summers*, 452 U.S. at 702-03).

Because the Court has found that Defendants' reliance on the search warrant is protected by qualified immunity, Defendants' detention of Alex during execution of the search is also protected by qualified immunity. *See Williams v. Cnty. of Santa Barbara*, 272 F. Supp. 2d 995, 1016 (C.D. Cal. 2003). Accordingly, Defendants are entitled to summary judgment on Plaintiff's unlawful detention claim.

### c. Unlawful Arrest Claim

Plaintiff argues that Defendants lacked probable cause to arrest Alex on charges of child exploitation. She also appears to argue that no exigencies justified a warrantless arrest. Defendants argue that the result of a preliminary forensic analysis of items seized from Alex's residence established probable cause for Alex's arrest.

Exigent circumstances must exist to justify a warrantless entry into a home for the purpose of an arrest or search. *See Payton v. New York*, 445 U.S. 573, 589-90 (1980). However, when a valid search warrant—rather than exigent circumstances—authorizes entry into the home, a warrantless arrest is lawful if execution of the search warrant uncovers incriminating evidence establishing probable cause for the arrest. *United States v. Brobst*, 558 F.3d 982, 997 (9th Cir. 2009).

"Probable cause for a warrantless arrest arises when the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person to believe that the suspect has committed an offense." *Lingo v. City of Salem*, 832 F.3d 953, 960 (9th Cir. 2016) (internal quotation omitted). An individual violates A.R.S. § 13-3553 by "[d]istributing, transporting, exhibiting, receiving, selling, purchasing, electronically transmitting, possessing or exchanging any visual depiction in which a minor is engaged in exploitive exhibition or other sexual conduct." A.R.S. § 13-3553(A)(2).

Defendants have identified undisputed evidence establishing probable cause for a

warrantless arrest of Alex on charges of sexual exploitation under A.R.S. § 13-3553. The forensic preview analysis completed prior to Alex's formal arrest did not result in the discovery of any actual child pornography files, but it did result in the discovery of remnants of files appearing to match those shared with TPD's undercover computer on December 2, 2015. (Doc. 87-2 at 15-17.)[10] In addition, the forensic preview analysis revealed evidence of the installation of software used to access the BitTorrent network, on which files of interest were shared on December 2, 2015. (Doc. 87 at 6; Doc. 87-2 at 3-4, 15-16.) Plaintiff has failed to identify any contrary evidence showing that a forensic preview of Alex's electronic devices did not reveal remnants of files of interest. Plaintiff points to discrepancies in the descriptions of the files of interest in Barry's search warrant affidavit (Doc. 87-2 at 30) and his Incident/Investigation Report (*id.* at 16-17), but these discrepancies do not undermine the existence of probable cause for Alex's arrest. In addition, Plaintiff alleges that the forensic preview occurred the day after Alex's arrest; however, the undisputed evidence shows that a preliminary forensic preview occurred on the arrest date and that a *second* forensic preview occurred the following day. (*See* Doc. 87-2 at 15-16.)

The evidence in the record reveals some discrepancies in Defendants' criminal investigation. Barry's arrest report inaccurately indicates that Alex was arrested on January 27, 2016; Defendants have not satisfactorily explained why the January 27, 2016 date is listed as the date of arrest on Alex's arrest report, the follow-up supplement date on Barry's Incident/Investigation Report, and the service report call date on the document titled "Event Chronology — E160270355." (Doc. 87-2 at 12; Doc. 98-6; Doc. 98-8.) Furthermore, Defendants have not adequately explained why the document titled "Event Chronology — E160270355" lists the case number for Alex's case but describes a call

---

[10] Because reliance on the search warrant was not unreasonable, Defendants' forensic preview of the seized items is protected by qualified immunity. However, even if the search of these items were unlawful, the Court could still consider the results of the forensic preview in determining whether Defendants had probable cause to arrest Alex, because "the exclusionary rule does not apply in § 1983 cases," and the Fourth Amendment does not prohibit arrests "justified solely on the basis of evidence procured" from an unlawful search. *Lingo*, 832 F.3d at 959-60.

regarding sex offenses related to Cheena Productions on January 27, 2016. (Doc. 98-8.) Although disconcerting, these unexplained discrepancies—without any evidence undermining the reliability of the forensic preview analysis of Alex's electronic devices—are insufficient to create a genuine issue of material fact regarding whether there was probable cause for Alex's arrest.

Neither do the progress notes from Arizona Oncology submitted by Plaintiff create such a genuine issue. (Docs. 98-2, 98-4, 98-16.) "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). There is no evidence that Defendants knew of the Arizona Oncology records, Plaintiff's medical appointments, or Plaintiff's medical condition at the time of Alex's arrest.

### d. Malicious Prosecution Claim

Plaintiff's Complaint alleges a malicious prosecution claim, without specifying whether the claim is alleged solely under state law or under 42 U.S.C. § 1983 as well. Although a plaintiff may pursue a § 1983 malicious prosecution claim "against state or local officials who . . . knowingly provided misinformation" to a prosecutor, such a claim requires proof that the defendants prosecuted the plaintiff "with malice and without probable cause." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066-67 (9th Cir. 2004); *see also Freeman*, 68 F.3d at 1189. Defendant's Motion for Summary Judgment does not address Plaintiff's malicious prosecution claim—presumably because Defendants assumed it was asserted only under state law and had been dismissed when all of Plaintiff's state-law claims were dismissed. To the extent that Plaintiff's Complaint could be liberally construed as asserting a malicious prosecution claim under § 1983, such a claim fails in light of the Court's finding that the undisputed evidence shows there was probable cause to arrest Alex.

. . . .

. . . .

### 2. Fifth and Fourteenth Amendment Claims

#### a. Equal Protection Clause

Although Plaintiff repeatedly references equal protection, she has not made any allegations or identified any evidence to support a claim under the equal protection clause of the Fourteenth Amendment. *See Awabdy*, 368 F.3d at 1071.

#### b. Self-Incrimination Clause

The parties dispute whether Plaintiff's Complaint raises a § 1983 claim asserting unlawful interrogation and violation of *Miranda*. Assuming that the Complaint raises such a claim, Defendants are entitled to summary judgment.

Claims concerning unlawful interrogation and violation of *Miranda* are analyzed under the Fifth Amendment's self-incrimination clause, made applicable to the States by the Fourteenth Amendment. *Chavez v. Martinez*, 538 U.S. 760, 766 (2003). The self-incrimination clause "requires that '[n]o person shall be compelled *in any criminal case* to be a *witness* against himself.'" *Chavez*, 538 U.S. at 766 (citing U.S. Const., Amdt. 5) (emphasis added by *Chavez*).

Plaintiff asserts that Defendants violated Alex's *Miranda* rights by failing to read him those rights on July 28, 2016, when officers detained Alex during execution of the search warrant and later arrested him on charges of child exploitation. (Doc. 98 at 5.) In particular, Plaintiff complains that Barry attempted to elicit a self-incriminating statement when he initially approached Alex's residence by asking Alex if he wished to speak to officers about why they were there. (Doc. 106 at 9.) According to Barry, Alex requested an attorney after being asked this question and was not further questioned.

Plaintiff has not shown that Alex was in custody within the meaning of *Miranda* at the time Barry asked if Alex wished to know why officers were at his residence. Furthermore, Plaintiff has identified no evidence that Alex made any incriminating statements that were used against him in a criminal case. A violation of the Fifth Amendment's self-incrimination clause does not occur until a statement compelled by police interrogation is admitted as testimony against a defendant in a criminal case.

*Chavez*, 538 U.S. at 766-67.[11]   Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim asserting a violation of the self-incrimination clause of the Fifth Amendment.

### c.   Substantive Due Process

Lower federal courts have taken differing approaches to the issue of whether a parent may sue under 42 U.S.C. § 1983 based upon the wrongful death of the parent's child. "The Supreme Court has yet to address whether and when the government's act of taking the life of one family member deprives other family members of a cognizable liberty interest in continued association with the decedent." *Smith*, 818 F.2d at 1418. The Ninth Circuit has held that a parent may seek damages under § 1983 premised on "a state's severance of a parent-child relationship as interfering with [the parents'] liberty interests in the companionship and society of their children." *Id.*; *see also Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986).

The Due Process Clause of the Fourteenth Amendment contains both procedural and substantive components:

> By requiring the government to follow appropriate procedures when its agents decide to deprive any person of life, liberty or property, the Due Process Clause promotes fairness in such decisions. And by barring certain government actions regardless of the fairness of the procedures used to implement them, it serves to prevent governmental power from being used for purposes of oppression.

*Smith*, 818 F.2d at 1415 (internal quotations and citation omitted).   A claim alleging interference with a parent's protected liberty interest in a parent-child relationship is analyzed as a procedural due process claim if the state had a legitimate interest in interfering with the liberty interest but the plaintiff alleges that the state provided fundamentally unfair procedures; for example, a parent might assert a procedural due process claim arising from a state's termination of the parent's custodial rights. *Id.* at

---

[11]    Although *Chavez* was a fractured decision, a review of the concurring and dissenting opinions in the case reveals that a majority of justices agreed on this point. To the extent that *Chavez* indicates that a claim alleging coercive interrogation may be raised pursuant to the substantive due process clause of the Fourteenth Amendment even when no self-incriminating statement was used against the interrogated individual in a criminal case, such a claim is foreclosed here by Plaintiff's failure to identify any evidence that Alex made self-incriminating statements compelled by a coercive interrogation.

1419.  A claim alleging that the state had no legitimate interest in interfering with the parent's liberty interest in the parent-child relationship is analyzed as a substantive due process claim.  *See id.* at 1419-20.

To the extent that Plaintiff's Complaint asserts a wrongful death claim under § 1983 rather than solely under state law, the § 1983 wrongful death claim is properly analyzed under the substantive due process clause of the Fourteenth Amendment. Defendants argue that they cannot be held liable for Alex's suicide under the substantive due process clause.  (Doc. 86 at 9-10.)  To prove a violation of substantive due process, a plaintiff must establish more than mere negligence.  *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).  Typically, only "conduct intended to injure in some way unjustifiable by any government interest" will "rise to the conscience-shocking level" necessary to violate substantive due process.  *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). Furthermore, absent a special relationship or a state-created danger, the government owes no duty under the Fourteenth Amendment's due process clause to protect individuals from private action.  *See Henry A. v. Willden*, 678 F.3d 991, 998 (9th Cir. 2012).  The special-relationship exception applies "when a custodial relationship exists between the plaintiff and the State such that the State assumes some responsibility for the plaintiff's safety and well-being."  *Id.*  The state-created danger exception applies when "the state affirmatively places the plaintiff in danger by acting with deliberate indifference to a known and obvious danger."  *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971-72 (9th Cir. 2011) (internal quotations omitted).

The undisputed evidence shows that Alex committed suicide after being released from custody.  To the extent that Alex's arrest and criminal prosecution could be construed as state action enhancing Alex's risk of suicide, the record does not contain sufficient evidence from which a reasonable trier of fact could conclude that Defendants were "deliberately indifferent" to a "known and obvious danger" that Alex would commit suicide after his release.  *See Patel*, 648 F.3d at 971-72.  Furthermore, the undisputed evidence indicates that any errors or irregularities in the criminal investigation and

prosecution of Alex resulted from mere negligence, as opposed to deliberate or intentional abuse of governmental power, and the Court has already found that Defendants had probable cause to arrest Alex for violating A.R.S. § 13-3553. Accordingly, to the extent Plaintiff is asserting a wrongful death claim cognizable under 42 U.S.C. § 1983 as alleging a violation of Plaintiff's substantive due process rights, the Court finds that Defendants are entitled to summary judgment on the claim.

### 3.    Conclusion

The deeply tragic loss of one's child is unimaginable, and the Court is sympathetic to Plaintiff's grief over the death of her son. However, based on the evidence that the parties have identified and placed in the record, Defendants have shown that they are entitled to summary judgment on Plaintiff's § 1983 claims.

## IV.    Dismissal of Unknown Defendants

The Ninth Circuit has held that where the identity of a defendant is unknown prior to the filing of a complaint, the plaintiff should be given an opportunity through discovery to identify the unknown defendant, unless it is clear that discovery would not uncover the defendant's identity, or that the complaint would be dismissed on other grounds. *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)). Discovery in the above-captioned case is closed, and Plaintiff has not sought leave to substitute the names of any unknown defendants. Accordingly, the Court will *sua sponte* dismiss the unknown TPD-officer defendants.

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 86) is **granted**. The Clerk of Court is directed to enter judgment in favor of Defendants and close this case.

. . . .

. . . .

. . . .

. . . .

**IT IS FURTHER ORDERED** that all unnamed defendants are hereby **dismissed without prejudice**.

Dated this 27th day of September, 2019.

Honorable Rosemary Márquez
United States District Judge